IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CUSTOM ALUMINUM PRODUCTS, )
INC., )
                                          Plaintiff, )
                                          v. )    No. 10 C 3611
AGC FLAT GLASS NORTH AMERICA, )
INC., )
                                          Defendant. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant AGC Flat Glass North America Inc. f/k/a AFG Insulating's (AGC) motion to dismiss. For the reasons stated below, we deny the motion to dismiss.

## BACKGROUND

Plaintiff Custom Aluminum Products, Inc. d/b/a/ Casco Industries Division of Custom (Casco) manufactures windows, doors, and other building product materials. Prior to 2004, Casco allegedly manufactured windows using double-paned insulated glass that was obtained from Cardinal Glass Industries (Cardinal). Casco contends that during that time, its customers were generally satisfied with the quality of

1

windows manufactured by Casco. In 2003, AGC allegedly solicited Casco's business for providing insulated glass to Casco. AGC allegedly represented to Casco that its sealant was significantly more reliable than competitors' sealant. In February 2004, Casco allegedly entered into a sales agreement with AGC (First Sales Agreement) that was effective February 2004 through February 2006. In February 2006, Casco allegedly entered into a second sales agreement with AGC (Second Sales Agreement). Between 2004 and 2008, Casco allegedly purchased all its insulated glass from AGC and installed it in windows and doors manufactured by Casco. Casco allegedly gave warranties to its customers that it would replace insulated glass for defective pieces and, in some instances, even pay costs for reinstallation of insulated glass.

In 2007, Casco allegedly started receiving complaints from customers that the insulated glass in its windows and doors was defective. Casco claims that it turned to AGC and asked AGC to honor the warranties it made to Casco in the First Sales Agreement and Second Sales Agreement (collectively referred to as "Sales Agreements"). According to Casco, by April 2008, the rate of defects in the insulated glass that had been provided by AGC greatly increased, exceeding the standard defect rate for a standard sealant. Casco contends that it incurred significant costs in rectifying the defects complained about by customers.

When the defects came to light, AGC allegedly began initially to supply Casco with replacement glass to give to complaining customers, but when that glass was found defective as well, Casco stopped accepting glass from AGC and started buying

replacement glass from Cardinal. AGC allegedly refused to provide any refund for replacement glass unless Casco produced the defective glass for inspection. Casco contends that it was sometimes unable to return the defective glass to AGC because either a third-party replaced the defective glass and did not give the defective glass to Casco or because the defective glass was destroyed during the replacement process. In May 2009, AGC allegedly stopped reimbursing Casco for any glass that needed to be replaced. AGC also allegedly informed Casco that AGC had shut down the manufacturing plant that made the insulated glass and that AGC would no longer supply any replacement glass. Casco claims that, thus far, over 1,500 units of AGC's insulated glass have been found to be defective. Casco contends that AGC breached implied warranties and the terms of the Sales Agreements.

Casco includes in its complaint a breach of implied warranty of merchantability claim (Count I), a breach of implied warranty of fitness for a particular purpose claim (Count II), and, in the alternative, a breach of contract/breach of express warranty claim (Count III).

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750,

3

753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

## DISCUSSION

AGC argues that the breach of implied warranty claims in Counts I and II should be dismissed, contending that there were clear and conspicuous disclaimers of such implied warranties in the Sales Agreements. AGC also contends that the breach of contract and breach of express warranty claims in Count III should be dismissed, arguing that the parties agreed in the Sales Agreements to limit the remedies and damages for breaches of the agreements. AGC further argues that if the court finds that there is no contractual limitation on damages, Casco cannot establish any damages for a breach of an express warranty. The parties agree that, based on the terms of the Sales Agreements, Michigan state law applies to the dispute in the instant action. (Mot. Dis. 5); (Ans. Dis. 6).

I. Breach of Implied Warranty Claims (Counts I and II)

AGC moves to dismiss the breach of implied warranty of merchantability

claim (Count I) and the breach of implied warranty of fitness for a particular purpose claim (Count II), arguing that the Sales Agreements contained clear and conspicuous disclaimers of all implied warranties.

### A. Whether Disclaimers were Clear and Conspicuous

AGC contends that the disclaimer of implied warranties included in the Sales Agreements (Agreement Disclaimer) and the disclaimer of implied warranties included in the terms and conditions of the Sales Agreements (Terms Disclaimer) were clear and conspicuous. Pursuant to Mich. Comp. Laws § 440.2316(2), "to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. . . ." *Id.* The term "conspicuous" is defined as a term that is written in a manner "that a reasonable person against whom it is to operate ought to have noticed it. . . ." Mich. Comp. Laws § 440.1201. A term is "conspicuous" if, for example, it is included in a "printed heading in capitals" or if the term "is in larger or other contrasting type or color." *Id.* In addition, under Michigan law, in assessing whether a term is conspicuous, a court should consider not only attributes of the term such as the orientation and font, but should also consider "any other circumstances that protect the buyer from surprise." *Lumber Mut. Ins. Co. v. Clarklift of Detroit, Inc.*, 569 N.W.2d 681, 683 (Mich. App. Ct. 1997)(explaining that "in determining as a matter of law the effectiveness of a

warranty disclaimer, . . . the primary focus is on whether a reasonable person ought to have noticed it").

In assessing the instant motion to dismiss, we can consider the Sales Agreements, which are attached as exhibits to the complaint. *See* Fed. R. Civ. P. 10(c)(stating that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)(explaining that the court could consider certain agreements since they were "attached as exhibits to [the plaintiff's] complaint"). The Agreement Disclaimer provided the following:

> <u>NO EXPRESS WARRANTIES AND NO IMPLIED WARRANTIES WHETHER OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR USE, OR OTHERWISE, SHALL APPLY TO PRODUCTS SOLD BY AFG INSULATING, AND NO WAIVER, ALTERATION, OR MODIFICATION OF THE FOREGOING CONDITIONS SHALL BE VALID UNLESS MADE IN WRITING AND SIGNED BY AN EXECUTIVE OFFICER OF AFG INSULATING.</u>

(Compl. Ex. A, B Par. 5). In addition, the Terms Disclaimer provided the following:

> **DISCLAIMER ON IMPLIED WARRANTIES FOR ALL AFG PRODUCTS: AFG MAKES NO OTHER EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY OF ANY KIND REGARDING THE PRODUCTS, WHETHER AS TO MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE OR USE, OR ANY OTHER MATTER.**

The Agreement Disclaimer and Terms Disclaimer (collectively referred to as "Disclaimers") clearly and unequivocally indicate that no implied warranties were

being extended to the glass provided by AGC. In addition, the Disclaimers appear to be conspicuously placed in the Sales Agreements. The Agreement Disclaimer is the only text in the Sales Agreements that is written in all capital letters and underlined, which is one indication that the Disclaimer is clear and conspicuous. The Terms Disclaimer is the only text in the terms and conditions in all bold capital letters. In addition, Casco has not contested, at this stage of the proceedings, AGC's assertion that the Disclaimers are clear and conspicuous.

### B. Whether Express Warranty Failed and is Unconscionable

Casco argues that the Disclaimer does not bar a breach of implied warranty claim because the express warranty fails of its essential purpose and is unconscionable. Casco contends that under such circumstances, the remedies available in the implied warranties became available to Casco, notwithstanding the Disclaimers. Under Michigan state law, "if circumstances cause a specified remedy to fail of its essential purpose, remedy may be had as provided elsewhere in the" Michigan Uniform Commercial Code. *Latimer v. William Mueller & Son, Inc.*, 386 N.W.2d 618, 625 (Mich. Ct. App. 1986)(indicating that an agreement that fails of its essential purpose may be deemed unconscionable and stating that "[u]nconscionability should be determined as of the time the contract is made"); *see also Severn v. Sperry Corp.*, 538 N.W.2d 50, 54 (Mich. Ct. App. 1995)(indicating that a warranty is deemed to "fail[] of its essential purpose where unanticipated circumstances preclude the seller from providing the buyer with the remedy to which

7

the parties agreed"); *Fire & Ice Mechanical, Inc. v. Bit Mat Products of Michigan*, 2007 WL 2962800, at *3 (Mich. Ct. App. 2007)(unpublished)(stating that "[u]nder the Uniform Commercial Code, a purchaser is limited to the terms of the seller's written warranty unless the warranty fails of its essential purpose").

Casco contends that the essential purpose of the express warranty in the Sales Agreements (Express Warranty) was to provide Casco with insulated glass that was free from material obstruction to vision due to defects caused by a failure of the hermetic seal. Casco argues that the Express Warranty failed of its essential purpose and is unconscionable because, according to Casco, (1) the parties could not have reasonably anticipated that such a large amount of glass would be defective, (2) the replacement glass that was being provided by AGC also was discovered to be defective, and (3) AGC stopped paying Casco for glass that needed to be replaced and refused to send further replacement glass. Casco claims that under such circumstances, the essential purpose of the Express Warranty could not be fulfilled.

AGC contends that it does not matter whether its express warranty failed of its essential purpose since its Disclaimer was clear and conspicuous. AGC contends that the cases cited by Casco, other than *Latimer*, dealt with limited express warranties, rather than a disclaimer of implied warranties as in the instant action. Even if the cases cited by Casco should be limited to affecting express limited warranties, in *Latimer*, the court dealt with an implied warranty disclaimer. 386 N.W.2d at 624-25. Although, as AGC points out, the court did not conclude that the disclaimer in that case was clear and conspicuous, the court did not hold that a clear

and conspicuous disclaimer of an implied warranty is always enforceable. Rather, the court in *Latimer* found that the disclaimer was invalid both "because it was insufficiently conspicuous" and because "it was an unconscionable attempt to limit liability for latent defects." *Id.* The court's reference to unconscionability left open the possibility that regardless of a clear and conspicuous disclaimer, in limited circumstances where an express limited warranty is unconscionable, other remedies such as implied warranties should be available. *Id.* Whether the instant action presents one of those rare situations when, based on unconscionability, a party can invoke implied warranties, cannot be assessed on the pleadings now before the court. If Casco entered into the Sales Agreements and agreed to waive the implied warranties with the understanding that it could depend on the Express Warranty and the Express Warranty proved to be illusory, the unconscionability of the situation could warrant certain relief for Casco. The inquiry concerning whether the Sales Agreements failed of their essential purpose and the unconscionability inquiry involve an evaluation of facts and evidence that is beyond the pleadings. This is illustrated by the fact that AGC, in its motion, contends that Casco has no claim because AGC is "willing and able to provide Casco with a replacement or refund for each defective product. . . ." (Mot. Dis. 10). AGC's argument is directly contrary to the allegations in the complaint, which indicate that despite Casco's demands, AGC has refused to provide Casco with a refund or replacement glass since May 2009. (Compl. Par. 35-38). AGC's statement that it is ready to supply replacement glass is also contrary to the allegation in the complaint that AGC informed Casco that AGC

9

had "closed its manufacturing plant which manufactured the insulated glass supplied to Casco and that [AGC] would no longer fulfill the warranty." (Compl. Par. 38). AGC also argues that, even if it has not responded to all of Casco's request for refunds, AGC should be allowed under the terms of the Sales Agreement to inspect replacement glass before it is required to provide a refund. However, an assessment of AGC's argument involves a consideration of evidence outside of the pleadings, which is premature at this juncture. AGC has not shown that Casco has failed to state a valid claim for a breach of implied warranties. Therefore, we deny the motion to dismiss the breach of implied warranties claims (Counts I-II).

II. Breach of Contract and Breach of Express Warranty (Count III)

AGC moves to dismiss the breach of contract and breach of express warranty claims (Count III), arguing that the parties agreed in the Sales Agreements to limit the remedies and damages for breaches of the agreements. AGC also contends that, even if the court finds that there is no contractual limitation on damages, Casco cannot establish any damages for a breach of an express warranty.

A. Limitation on Relief

AGC contends that in the Sales Agreements the parties agreed to a limitation on the relief that would be available in the event of a breach of the agreements, and thus, the damages sought in the instant action are not available to Casco. Pursuant to Mich. Comp. Laws 440.2719, subject to certain limitations, parties can by agreement

"limit or alter the measure of damages recoverable. . . as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts" and if "the remedy is expressly agreed to be exclusive, . . . it is the sole remedy." *Id.*; *see also Latimer*, 386 N.W.2d at 625 (indicating that "where circumstances cause a specified remedy to fail of its essential purpose, remedy may be had as provided elsewhere in the" Michigan Compiled Laws and "consequential damages may be limited or excluded unless an unconscionable result would be worked").

AGC contends that under the terms of the Sales Agreements, Casco's remedies for a breach of the Express Warranty are limited to either replacement of the product or a refund of the original selling price. The Sales Agreements provide that Casco's "sole remedy shall be limited to a refund or replacement of the product and in no event, shall [AGC] be liable for any incidental or consequential damages incurred by" Casco. (Compl. Ex. A, B Par. 6). As indicated above, although AGC indicates it is willing to provide Casco with replacement glass or refunds, such contentions are contrary to the allegations in the complaint, which must be accepted as true for the purpose of ruling on the instant motion. In addition, AGC disputes whether it was required to provide refunds only for defective glass that was produced by Casco, but such arguments are premature at this juncture. Thus, even if the remedy limitation in the Sales Agreement was enforceable, Casco has plausibly suggested that AGC breached its obligations under the Sales Agreements by failing to provide even the limited remedies available to Casco. Casco also alleges that

although AGC gave an appearance at one point of providing Casco with replacement glass, the remedy given was illusory because significant amounts of the replacement glass were also defective. According to Casco, based on AGC's alleged refusal to honor the Express Warranty, Casco had no alternative but to turn to Cardinal to address the customer complaints of defective glass. Such facts must be taken as true at the pleadings stage. Thus, AGC has not shown that the limitations of relief provision in the Sales Agreements warrants a dismissal of the breach of contract and express warranty claims.

### B. Proof of Damages

AGC also argues that, even if Casco could show that its claims seeking damages for a breach of contract or breach of express warranty are not barred by the limitations provision in the Sales Agreements, Casco has not established the extent to which it has been damaged. AGC contends that Casco has alleged that the replacement glass is either missing or destroyed and that Casco therefore has no means to establish its damages. AGC is again delving beyond the pleadings in arguing whether Casco will be able to produce sufficient evidence to support its case. Even if the replacement glass were missing or destroyed, there is no rule that would categorically bar Casco from attempting to prove its damages through other means, such as with circumstantial evidence. AGC has not shown that the pleadings are such that Casco would be unable to establish the extent of its damages. AGC also argues that it would be unfair to allow Casco to base its damages on missing

evidence. However, such evidentiary issues are not properly before the court at the motion to dismiss stage. Therefore, based on the above, we deny the motion to dismiss.

## CONCLUSION

Based on the foregoing analysis, we deny AGC's motion to dismiss.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: November 17, 2010